IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **BONNIE S. GATWOOD,** | : | |
| Plaintiff, | : | Case No. 2:15-cv-2852 |
| v. | : | **JUDGE ALGENON L. MARBLEY** |
| **COMMISSIONER OF SOCIAL SECURITY,** | : | Magistrate Judge Deavers |
| Defendant. | : | |

## OPINION & ORDER

This matter comes before the Court for consideration of Bonnie S. Gatwood's Objection to Magistrate Judge Deavers's January 31, 2017 **Report and Recommendation** (Doc. 29), which recommends that this Court overrule Gatwood's Statement of Specific Errors (Doc. 19) and affirm the Commissioner of Social Security's decision. Upon independent review by this Court, and for the reasons set forth below, Gatwood's Objection is hereby **OVERRULED**. The Court **ACCEPTS** and **AFFIRMS** the Magistrate Judge's **Report and Recommendation**.

## I. BACKGROUND

Bonnie Gatwood applied for supplemental security income ("SSI") in March 2012. She alleged that she became disabled on April 24, 2006. After initial administrative denials of her application, an Administrative Law Judge ("ALJ") conducted a first video hearing on September 17, 2013, but that ALJ retired without issuing a decision. On May 7, 2014, a different ALJ conducted a second hearing, and a week later, that ALJ issued a decision finding that Gatwood was not disabled within the meaning of the Social Security Act.

1

In his opinion denying benefits, the ALJ conducted the required five-step sequential analysis for a disabilities benefits claim.  *See* 20 C.F.R. § 416.920(a)(4).[1]  At step one, the ALJ determined that Gatwood has not engaged in substantially gainful activity since her alleged onset disability date of April 24, 2012.

At step two, the ALJ found that through her date last insured ("DLI") of December 31, 2011, Gatwood had the severe impairments of sacroiliitis; sciatic nerve neuritis; lumbar herniated nucleus pulposus; and right knee meniscal tear.  The ALJ also concluded that Gatwood did not have a medically discernable mental impairment.

---

[1] The five sequential steps are as follows:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. § 416.920(a)(4).

At step three, the ALJ further found that these impairments, whether taken alone or in combination, did not meet or medically equal one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Gatwood has the residual functional capacity ("RFC') to perform light work, including lifting and/or carrying ten pounds frequently and fifteen pounds occasionally, standing and walking for four hours in an eight hour work day, and frequently climbing ramps and stairs.  The ALJ further found that this RFC prevents Gatwood from being able to perform any past relevant work.

Nevertheless, at step five, the ALJ found that jobs exist in significant numbers within the national economy such that Gatwood could obtain employment consistent with her age, education, work experience, and RFC.

The ALJ's assessment of Gatwood's medical impairments and her RFC was based primarily on testimony from medical experts and now forms the crux of this dispute.  Upon evaluating all of the medical evidence, the ALJ weighed each of the treating and evaluating physicians' medical opinions.

Dr. Jeffery Haggenjos, Gatwood's primary care physician, held a doctor/patient relationship with Gatwood since November 2006.  In June 2011, April 2012, and January 2013, Dr. Haggenjos suggested that Gatwood would not be able to perform any meaningful work. The ALJ assigned this opinion little weight, however, because Dr. Haggenjos's opinion was not supported by the preponderance of the available medical evidence.

Dr. Kantor, who also performed an in-person examination of Gatwood, stated that she could return to work "without restrictions." (Admin. R., Doc. 9-8, PageID 972). Although Dr. Kantor's opinion contradicted Dr. Haggenjos's opinion, the ALJ assigned it little weight because it was not consistent with the totality of the medical evidence. The ALJ also discounted Dr. Kantor's opinion because it was based off of only a short period of experience treating Gatwood.

The ALJ also assigned little weight to the opinions of the state-agency reviewing physicians, Dr. Cruz and Dr. Mikalow, because they also underestimated Gatwood's limitations in their file reviews.

The ALJ assigned considerable weight, however, to the opinion of Dr. Kendrick, a board-certified orthopedic surgeon who reviewed Gatwood's file and had an opportunity to observe her throughout these proceedings. The ALJ found that Dr. Kendrick analysis was more reliable than the file reviews conducted by the state agency sources because his opinion was consistent with and supported by objective clinical and laboratory findings from the record. The ALJ also noted that Dr. Kendrick is familiar with the requirements of the Social Security Administration program and also had a longitudinal perspective of Gatwood's condition.

The Appeals Council denied Gatwood's request for review of the ALJ's determination on December 4, 2015, thus rendering the ALJ's benefits-denial decision the Commissioner's final agency action. Gatwood then filed suit in federal court, alleging in her Statement of Errors that the ALJ's finding was incorrect because it failed to find that she suffered from a medically-determinable mental health impairment and that the ALJ erred in not following the treating source rule.

On January 1, 2017, the Magistrate Judge recommended that this Court overrule Gatwood's Statement of Errors and affirm the Commissioner's denial of benefits. The Magistrate first noted that "if no signs or laboratory findings substantiate the existence of an impairment, it is appropriate to terminate the disability analysis." (Doc. 29, PageID 1947). The Magistrate then noted that Gatwood bears the burden of proving that she suffers from a medically determinable mental impairment. The Magistrate concluded, however, that "Gatwood reference[d] only three instances in the record upon which she apparently relies to satisfy this burden"—none of which passed muster. (*Id.* at PageID 1949). The Magistrate also rejected Gatwood's argument under the treating source rule after finding that the ALJ provided sufficient justification for rejecting Dr. Haggenjos's opinion. Gatwood timely objected.

## II. STANDARD OF REVIEW

Upon objection to a magistrate judge's report and recommendation, this Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b). This de novo review, in turn, requires the Court to "determine whether the record as a whole contains substantial evidence to support the ALJ's decision" and to "determine whether the ALJ applied the correct legal criteria." *Inman v. Astrue*, 920 F. Supp. 2d 861, 863 (S.D. Ohio 2013). Substantial evidence means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quotation omitted). Substantial evidence constitutes "more than a mere scintilla, but only so much as would be required to prevent judgment as a matter of law against the Commissioner if this case were being tried to a jury." *Inman*, 920 F. Supp. 2d at 863 (citing *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988)).

5

## III.  ANALYSIS

Gatwood objects to the Magistrate Judge's Report and Recommendation on two grounds.  First, Gatwood argues that the ALJ erred by finding that her mental health impairment was not supported by substantial, determinable medical evidence.  Second, Gatwood argues that the ALJ violated the long-standing "treating physician rule."  Gatwood requests that the Court reverse the Commissioner's denial of her benefits claim because of these alleged errors.

**A.  The ALJ's Finding of No Medically Determinable Mental Health Impairment Does Not Require Reversal.**

Gatwood first objects to the Magistrate Judge's finding regarding the ALJ's determination that she suffers from no medically determinable mental health impairment.  Reviewing the record in its entirety, this Court disagrees with Gatwood.

Recall that the Magistrate found the ALJ's determination to be supported by substantial evidence in the record and, thus, not a ground for reversal.  The Magistrate Judge accurately concluded that the ALJ's statement that "the record is devoid of evidence to establish [Gatwood] had medically determinable mental impairments through her date last insured," is correct when read in context.  (Doc. 29, PageID 1950 (quoting Admin. R., Doc. 9-2, PageID 74)).  Just before making this statement, the ALJ properly set forth the acceptable forms of evidence that may be used to establish a mental impairment as follows:

> In addition . . . the undersigned finds that, *through the date last insured*, the claimant did not have a medically determinable mental impairment.  As set forth in 20 CFR 404.1508, an impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms.

(Admin. R., Doc. 9-2, PageID 74).

The Magistrate Judge's characterization of the ALJ's findings is appropriate. While Gatwood occasionally complained of depression during some of her evaluations, she never was diagnosed with, or treated for, a mental health impairment. Mental health issues—while serious and, at times, more difficult to ascertain than physical impairments—remain subject to the rigors of medical diagnosis. *See* 20 C.F.R. § 404.1528(a)-(b) ("Psychiatric signs are medically demonstrable phenomena."); *see also, e.g.*, *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989). Mere statements of self-diagnosis from Gatwood as to her mental condition do not suffice to prove a mental health impairment.

As to the medical evidence from the record, including observations from treating and reviewing sources, one statement from Dr. Oricoli observing that Gatwood displayed "a slightly flat affect" cannot be construed as a mental health diagnosis, especially when viewed in the context of the *physical* examination taking place. (Admin. R., Doc. 9-7, PageID 487 (discussing objective observations from Gatwood's consult regarding botox injections and physical pain)).

Dr. Smith, in a January 2010 observation, noted that Gatwood cried and self-reported as being depressed because she was unable to return to work. (*Id.* at PageID 478). But crying and being upset while undergoing a physical examination for pain in one's left buttock, leg, and groin, is normal, and these symptoms may have been indicative of Gatwood's physical circumstances, not an underlying mental impairment. *See* SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996) (noting that symptoms do not constitute a medically determinable impairment); *see also Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 436 (6th Cir. 2010) (affirming step-two finding of no severe mental impairment where claimant "attribute[d] much of her anxiety to her physical condition," reasoning that "[t]his self-assessment supports the ALJ's conclusion that [claimant's] anxiety was a symptom of her physical impairment and not a separate disorder").

Likewise, in the third and final record on which Gatwood relies, Dr. Fabian, who was evaluating her in September 2011 for therapy due to her complaints of pain, simply noted that Gatwood cried and self-reported depression.  (Admin. R., Doc. 9-8, PageID 574).  But Dr. Fabian reported his own mental-health status and neurologic exam findings as "normal," and like Drs. Oricoli and Smith, Dr. Fabian diagnosed Gatwood only with physical impairments (*Id.* at PageID 572-73 (diagnosing low-back pain and left groin pain)).

None of these records, either alone or standing in combination, compels a finding of a mental impairment.  Moreover, in late 2012, another doctor, Dr. Hasl, reported normal neurologic and psychiatric examination findings, including an observation that Gatwood exhibited a "[n]ormal mood with an appropriate affect."  (*Id.* at PageID 727-30).  And one of the state-agency file reviewers concluded that it contained insufficient evidence to establish Gatwood had a medically determinable mental impairment.  (Admin. R., Doc. 9-3, PageID 155 ("No mental medically determinable impairments established.")).

In sum, substantial evidence in the record supports the ALJ's finding that Gatwood failed to establish a medically determinable mental impairment.  Accordingly, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation on this point and affirms the Commissioner's step-two finding.

### B.  The ALJ Did Not Violate the "Treating Source Rule."

Gatwood also objects to the Magistrate Judge's recommendation regarding the ALJ's treatment of Dr. Haggenjos's opinion on the grounds that the ALJ did not follow the treating source rule.  Reviewing the record in its entirety, this Court disagrees with Gatwood and finds substantial evidence in the record to support the limited weight the ALJ accorded to the opinions of Gatwood's primary care physician.

The treating source rule provides some deference to the opinions of a claimant's primary healthcare providers because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009) ("[A]s a treating physician, any opinions Dr. Kiefer made should have been controlling weight absent justifiable reasons—made on the record—for discounting those opinions." (citing SSR 96-2p, 1996 WL 374188, at *4-5 (July 2, 1996))). If the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 416.927(c)(2).

The treating source rule, however, does not require blind (or absolute) deference. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). An ALJ may decline to afford controlling weight to a treating source's opinion, but the ALJ must meet certain procedural requirements first. *Id.* These requirements include consideration of "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Id.* An ALJ, moreover, must "always give good reasons" in his or her decision "for the weight [the ALJ] give[s]" to a treating source's opinion. 20 C.F.R. § 416.927(c)(2); *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) ("The ALJ's decision as to how much weight to accord a medical opinion must be accompanied by 'good reasons' that are 'supported by the evidence in the case record, and must be sufficiently specific . . . .'" (quotation omitted)).

9

Gatwood urges the Court to consider the both the number and the duration of her visits with Dr. Haggenjos—her primary care physician—in arguing that the ALJ violated the treating source rule. (Doc. 30, PageID 1960 ("Dr. Haggenjos brought a longitudinal perspective to his medical source opinion, informed by repeated personal examinations over the course of years . . . . The ALJ declined to reasonably account for the nature of that relationship . . . .").

The ALJ was entitled to deny Dr. Haggenjos's opinion controlling weight because he fairly determined that it was not supported by the record as a whole. Consistency is a factor that must be evaluated when determining how much weight to give *any* medical opinion, including the primary, treating physician. 20 C.F.R. § 416.927(c)(4); *Blakely*, 581 F.3d at 406. As the regulation states, "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 416.927(c)(4).

This Court agrees that the ALJ provided a thorough treatment of the evidence and appropriately balanced Dr. Haggenjos's opinion against the rest of the record. Dr. Haggenjos opined that Gatwood's hip and back issues prevent her from engaging in any gainful employment. But this opinion (which more accurately states a legal conclusion) stands in contrast to a host of other evidence from the record, including the following: (1) Dr. Kendrick's opinion—which stated that Gatwood has the capacity to work with some weight carrying and standing/sitting restrictions; (2) the vocational expert's testimony—which stated there are over one million jobs in the national economy that someone with Gatwood's limitations could perform; (3) Dr. Fabian's opinion—which stated that Gatwood's physical status was normal and the pain is manageable through medicine and therapy; and (4) Dr. Cruz's opinion—which stated that there is no medical evidence to support Gatwood's contention that she cannot work.

The ALJ did not shy away from rejecting medical advice that stood opposed to Gatwood either. The ALJ rejected Dr. Kantor's opinion that Gatwood could return to work without any limitations because it too was "not consistent with the totality of medical evidence." (Admin. R., Doc. 9-2, PageID 76). Thus, consistency remained a focus of the ALJ's decision, and the ALJ applied that focus even-handedly.

As explained more thoroughly in the Report and Recommendation, the ALJ fairly weighed the evidence as a whole, crediting that which was consistent with the record (or which came from a specialist and was related to that area of specialty) and discrediting that which stood as an outlier. Moreover, the ALJ appropriately explained his findings and the weight he accorded to each source. That is all the treating source rule requires. Accordingly, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation on this point and affirms the Commissioner's decision.

## IV.  CONCLUSION

For these reasons, the Court **ACCEPTS** and **AFFIRMS** Magistrate Judge Deavers's **Report and Recommendation** (Doc. 29), thereby **OVERRULING** Gatwood's objection (Doc. 30). The Commissioner's denial of benefits is **AFFIRMED**. This case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

                                                           /s/ Algenon L. Marbley
                                            **ALGENON L. MARBLEY**
                                            **UNITED STATES DISTRICT JUDGE**

**DATED:  March 17, 2017**